```
                                    UNITED STATES DISTRICT COURT
                                    SOUTHERN DISTRICT OF FLORIDA

                                    CASE NO. 10-23089-CIV-SEITZ
                                    MAGISTRATE JUDGE P.A. WHITE
MOSES HAYES,                    :

        Plaintiff,              :

v.                              :        REPORT OF
                                        MAGISTRATE JUDGE
RATHERMAN, et al.,              :

        Defendants.             :
_____
```

## I. Introduction

The plaintiff, Moses Hayes, currently incarcerated at the United States Penitentiary in Beaumont, TX, has filed a *pro se* civil rights action pursuant to Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), raising claims arising from events which took place at FDC Miami between October 12, 2009 and January 8, 2010. (DE# 1). As defendants, Hayes names the following individuals who worked at FDC Miami at the relevant time: Warden John Rathman; Associate Warden Edwin Perez; Captain Darrol Acre; Special Investigative Agent ("SIA") Brian Best; Lieutenants Thomas Miller and Jeremy Longo; and Correctional Officers Andres Laureano, Eugene Brown, Justin Casey, and David Richardson. (DE# 1).

**This Cause is before the Court upon the defendants' joint motion to dismiss/summary judgment (DE#40),** with supporting exhibits. (DE# 40). This court issued an order of instructions to the pro se plaintiff concerning a response to the defendants' motion for summary judgment. (DE# 41). Hayes filed a response to the defendants' motion for summary judgment, with supporting exhibits. (DE# 47). The defendants filed a reply to the response.

(DE# 49).

## II.   Background Facts

Hayes alleged the following facts in his complaint. (DE# 1). On October 9, 2009, defendants Rathman, Perez, Best, and Acre placed him in general population, thereby ignoring his claims that his life would be in danger if so placed.  On October 12, 2009, while in protective custody, defendant Longo entered his cell and severely beat him in retaliation for filing an administrative complaint wherein he alleged his life was put in danger when he was forced to join the general population. On December 3, 2009, defendants Longo, Laureano, and Richardson threw him on the floor and pressed their knees onto his head and neck, while he was handcuffed.  They proceeded to beat him so severely he had to be treated by an outside hospital.  On December 11, 2009, he complained to defendants Acre, Casey, and Brown that he was in pain, he could not walk, and he needed a wheelchair. Acre, Casey, and Brown threatened him and said he was going to die, then entered his cell, hand-cuffed him, and dragged him on the floor to another cell.  On December 24, 2009, defendant Longo denied him medical treatment.  He told Longo that he could not move and was in severe pain Longo ignored his request and he was forced to remain in his bed for eleven days without food.  On January 8, 2010, defendants Miller and Brown physically assaulted him and dragged him to another cell, after he said he could not walk and needed a wheelchair. (DE# 1).

The defendants provided their version of the events in the motion to dismiss. (DE# 40, p. 4-6).  In October 2009, Hayes advised the staff that he heard rumors that a group of inmates believed he had cooperated in an investigation against one of them and that the inmates were making threats against him.  Special

2

Investigations Services Technician (SIS Tech) Leslie Yip conducted a threat assessment based on Hayes's allegations. She executed a declaration, which is attached to the defendants' motion to dismiss. (DE# 40-1). Hayes requested that he be removed from the general population and, accordingly, he was placed in protective custody on October 9, 2009. (Id. at ¶3). At the conclusion of the threat assessment, it was determined that the allegations of inmate threats against Hayes could not be verified. (Id. at ¶6). As a result, it was determined that Hayes could be released from protective custody. (Id.). On December 2, 2009, Hayes was released back into the general population. (Id. at ¶7).

Special Investigative Agent Brian Best executed a declaration, which is attached to the defendants' motion to dismiss. (DE# 40-2). On December 3, 2009, Best learned that Hayes's mother had called and stated that her son's life was in danger and explained that her son had called her and said he was in fear for his life. SIA Best immediately informed the lieutenant on duty that Hayes needed to be placed in protective custody until an investigation into the allegations was completed. (Id. at ¶6).

According to his declaration attached to the motion to dismiss, defendant Laureano went to Hayes's housing unit and asked Hayes to turn around so he could be handcuffed and taken to the protective custody unit ("SHU"). (DE# 40-3 ¶3). Hayes became aggressive, cursed at Laureano, yelled he was not going to SHU and that Laureano would have to fight him. Hayes then pushed Laureano and an immediate use of force was implemented. (Id.). Laureano pushed Hayes to the ground and handcuffed him, with the help of defendant Richardson. Richardson executed a declaration wherein he corroborated Laureano's version of events. (DE# 40-4). Richardson observed Hayes yelling and then lunging at Laureano. (Id. at ¶ 3). Richardson ran over and helped Laureano push Hayes to the ground

3

and attach handcuffs. (Id.).  After Hayes was restrained, he was taken to the infirmary.  (DE# 40-2 ¶9). During the subsequent medical evaluation, Hayes complained of back pain and he was taken to a local hospital for further evaluation.  (Id.).

The defendants denied Hayes's other allegations of incidents which allegedly occurred October 12, December 11, December 24, 2009 and January 8, 2010. (DE# 40, p. 5).

### III.   Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment is proper "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law."

In Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986), the Supreme Court held that summary judgment should be entered only against

> a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

(citations omitted).  Thus, pursuant to Celotex and its progeny, a movant for summary judgment bears the initial responsibility of

4

informing the court of the basis for his motion by identifying those parts of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits. Hoffman v. Allied Corp., 912 F.2d 1379, 1382 (11 Cir. 1990). If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the non-moving party, to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11 Cir.), cert. denied, 112 S.Ct. 913 (1992). It is the non-moving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. Earley v. Champion International Corp., 907 F.2d 1077, 1080 (11 Cir.1990). The non-moving party cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial Fed.R.Civ.P. 56(e); Coleman v. Smith, 828 F.2d 714, 717 (11 Cir. 1987). If the evidence presented by the non-moving party is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Baldwin County, Alabama v. Purcell Corp., 971 F.2d 1558 (11 Cir. 1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11 Cir. 1990) (citing Anderson, 477 U.S. 242).

## IV. Discussion

In the motion to dismiss (DE# 40), the defendants argue that they are entitled to summary disposition of the complaint, in the

defendants' favor, on multiple grounds. First, the defendants argue that the Bivens complaint is subject to dismissal because the inmate plaintiff failed to fully exhaust his available administrative remedies before filing suit in federal Court, as required under the administrative exhaustion provision of the Prison Litigation Reform Act of 1995 ("PLRA"), which is codified at 42 U.S.C. §1997e(a). Defendants alternatively argue that they are entitled to qualified immunity. (DE# 40).

For reasons further discussed, below, it is apparent that the Court, pursuant to the statutory mandate of the PLRA, and the case law interpreting §1997e(a), must dismiss the complaint, which arises under Bivens, because the inmate/plaintiff Hayes did not exhaust his available administrative remedies pursuant to 28 C.F.R. §542.10, et seq., before seeking relief in federal court. To treat the Bivens complaint otherwise would create a loophole which would undermine PLRA. In light of this recommendation, any detailed discussion regarding the defendants' alternative defenses is not warranted.

As enacted on April 26, 1996, the PLRA significantly altered a prisoner's right to bring civil actions in forma pauperis, and in pertinent part places new restrictions on a prisoner's ability to seek federal redress concerning the conditions of his confinement. Title 42 U.S.C. §1997e, entitled Suits by Prisoners, provides, in pertinent part, as follows:

> (a) Applicability of administrative remedies
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

6

As a federal prisoner who has filed suit pursuant to Bivens, the plaintiff Flores-Estrada's Bivens claims of retaliation and indifference to his safety cannot be brought against the defendant Miller in his individual capacity in the federal forum unless he has first exhausted his federal administrative remedies, 28 C.F.R. §542.10 et seq.; and where such administrative remedies have not been exhausted, the defendant is correct in arguing that claims are subject to dismissal pursuant to 42 U.S.C. §1997e. Irwin v. Hawk, 40 F.3d 347 (11 Cir. 1994); Irwin v. Quinlan, 791 F.Supp. 301, 302 (S.D.Ga. 1992) (citing Pyles v. Carlson, 698 F.2d 1131, 1132 (11 Cir. 1983)). Both before and following enactment of the PLRA, and the amendment of 42 U.S.C. §1997e, the requirement that a federal prisoner must exhaust his or her remedies available within the prison system before bringing suit in federal court has been held to apply regardless of whether the prisoner's claims seek injunctive relief, monetary relief, or both. Terrell v. Brewer, 935 F.2d 1015, 1019 (9 Cir. 1991); Irwin v. Quinlan, supra; Alexander v. Hawk, 159 F. 3d 1321, 1325-26 (11 Cir. 1998); Massey v. Helman, 35 F.Supp.2d 1110, 1112-14 (C.D.Ill. 1999); Fortes v. Harding, 19 F.Supp.2d 323, 324-26 (M.D.Pa. 1998).

The administrative remedy procedure for federal prisoners to exhaust claims raised pursuant to Bivens is set forth at 28 C.F.R. §542.10, et seq. See Davis v. United States, et al., No. 07-14639, 272 Fed.Appx. 863, 865, 2008 WL 943594, at *2 (11 Cir., April 9, 2008); Lambert v. United States, et al., No. 05-16607, 198 Fed. Appx. 835, 840, 2006 WL 2468533, at *4 (11 Cir., Aug.28, 2006). It is a three-level process in which the prisoner's complaint must be initiated at the prison, and if denied must be appealed success- ively to the Regional Director and General Counsel of the Bureau of Prisons. First the inmate must file form BP-9 with the warden of his institution. If dissatisfied with the response, the inmate can appeal, using form BP-10, to the Regional Director. The inmate can

further appeal using form BP-11, to the General Counsel in the Bureau of Prisons Central Office. Administrative remedies have not been exhausted until the inmate's claim has been filed at all levels and has been denied at all levels. See 28 C.F.R. §§542.10 - 542.16. An inmate may bypass the institutional level BP-9, and file directly with the Regional Director, when he/she is filing a grievance of a sensitive nature. See 28 C.F.R. §542.14(d)(1).

The kind of claim raised by the plaintiff in this case comes under the purview of the statute.[1]

The Courts have made clear that §1997e(a), as amended, requires a prisoner to have exhausted those administrative processes which are available to him before bringing suit on a claim in federal court. Alexander v. Hawk, 159 F.3d 1321 (11 Cir. 1998); Booth v. Churner, 532 U.S. 731, 736-41 (2001) (holding that "one 'exhausts' processes, not forms of relief..."); Miller v. Tanner, 196 F.3d 1190, 1193 (11 Cir. 1999) (incarcerated state prisoner must first comply with the grievance procedures established by the state department of corrections before filing a federal lawsuit under §1983); Harper v. Jenkin, 179 F.3d 1311, 1312 (11 Cir. 1999) (where a grievance was not timely filed, an appellant must have sought leave to file an out-of-time grievance, and if he has not done so before bringing suit, then his

---

[1] The types of claims which fall within the purview of the statute are not limited to physical conditions encountered within the inmate's cell such as heating or cooling, limited space, or squalor. The Courts have held that a wide spectrum of claims constitute "prison conditions" for purposes of §1997e. This includes, for example, allegations of medical indifference, use of excessive force, and retaliation. See: Allen v. Vaugner, No. 2:07-CV-90-ID, 2009 WL 857000 (M.D.Ala., March 26, 2009) (Bivens action, alleging retaliation, dismissed pursuant to 42 U.S.C. §1997e(a), for lack of exhaustion); Harper v. Jenkin, 179 F.3d 1311 (11 Cir. 1999) (prisoner medical claims); Booth v. Churner, et al., 206 F.3d 289 (3 Cir. 2000) (case involving excessive force by guards; in which the Court held that for purposes of the PLRA, conditions of confinement-- in addition to complaints about things such as overcrowding, inadequate medical facilities, and inadequate law library facilities –- also include denial of food, denial of heating, and denial of medical attention, because all such actions "affect the lives of prisoners similarly," and "make their lives worse").

8

administrative remedies will be considered unexhausted, since to find otherwise would allow inmates to simply ignore the PLRA's exhaustion requirement and still gain access to federal court).

Thus, the Courts have held that satisfaction of the PLRA exhaustion requirement serves as a threshold issue, since the statutory mandate requires an inmate/prisoner must have fully exhausted the administrative remedies/processes which are available to him or her, <u>before</u> bringing suit on a claim in federal court, regardless of the form of relief that the administrative process makes available. <u>See</u> <u>Booth</u>, <u>supra</u> 532 U.S. at 736-41; <u>Higginbottom v. Carter</u>, 223 F.3d 1259 (11 Cir. 2000); <u>Miller</u>, <u>supra</u>, 196 F.3d at 1193; <u>Harris v. Garner</u>, 190 F.3d 1279, 1286 (11 Cir. 1999); <u>Harper</u>, <u>supra</u>, 179 F.3d at 1312; <u>Alexander</u>, <u>supra</u>, 159 F.3d at 1325-26.

The Eleventh Circuit and Supreme Court have outlined policy concerns underlying the exhaustion requirement, which are served when inmates are not permitted to simply ignore the PLRA's exhaustion requirement, and yet gain access to federal court.[2]

---

[2] The Eleventh Circuit has described seven policy reasons for favoring an exhaustion requirement: (1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures. <u>Alexander v. Hawk</u>, <u>supra</u>, 159 F.3d at 1327; <u>Johnson v. Meadows</u>, 418 F.3d 1152, 1156 (11 Cir. 2005). The Supreme Court, in 2002, observed that the current exhaustion requirement under §1997e(a) was designed to reduce the quantity and improve the quality of prisoner suits, and affords corrections officials an opportunity to address complaints internally before allowing the initiation of a federal case; and in some instances, corrective action taken in response to a grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. <u>Porter v. Nussle</u>, 534 U.S. 516, 516-17 (2002). The Court further noted that in other instances, the internal review might filter out some frivolous claims; and for cases ultimately brought to court, an administrative record clarifying the controversy's contours could facilitate adjudication. <u>Id</u>. at 517.

Even when an inmate argues that it would be futile for him to attempt to exhaust the administrative processes which are available as part of an established inmate grievance procedure, that does not excuse the inmate/plaintiff's failure to comply with the statutory requirement that he do so.[3]

Hayes filed administrative complaints regarding some of the incidents he mentions in the complaint, however, he failed to

---

[3] The term "available," as used in Section 1997e(a), does not mean that inmates must only exhaust their administrative remedies if the type of relief they seek is "available" within the administrative apparatus; instead, the term means that a prisoner must exhaust all administrative remedies that are available before filing suit, regardless of their adequacy. Alexander v. Hawk, supra at 1325-26; Harris v. Garner, 190 F.3d 1279, 1286 (11 Cir. 1999). This means that an inmate who is seeking money damages as relief from defendants in a lawsuit must exhaust all of his administrative remedies before filing suit, even if money damages are not available as relief through the jail or prison grievance procedure. Alexander, supra; Moore v. Smith, 18 F.Supp.2d 1360, 1364 (N.D.Ga. 1998). The Supreme Court has explained that "available" refers to the "possibility of some relief for the action complained of." Booth v. Churner, 532 U.S. 731, 738 (2001); Hall v. Richardson, 144 Fed.Appx. 835, 836, n.2 (11 Cir. 2005) (citing Booth, for the Court's definition of "available" in the context of §1997e(a)).

The Eleventh Circuit has held that "the judicially recognized futility and inadequacy exceptions do not survive the new mandatory exhaustion requirement of the PLRA," Alexander v. Hawk, supra, 159 F.3d at 1325-26; Harris v. Garner, 190 F.3d 1279, 1286 (11 Cir. 1999). Where exhaustion is now a precondition to suit "the courts cannot simply waive those requirements where they determine that they are futile or inadequate," since "such an interpretation would impose an enormous loophole in the PLRA which Congress clearly did not intend," and because "[m]andatory exhaustion is not satisfied by a judicial conclusion that the requirement need not apply," Alexander, supra, at 1326 [citing, Weinberger v. Salfi, 422 U.S. 749, 766 (1975) (holding that where exhaustion is a statutorily specified jurisdictional prerequisite, "the requirement...may not be dispensed with merely by a judicial conclusion of futility")]. Cf. Qawi v. Stegall, et al., 211 F.3d 1270 [table case, published on Westlaw], No. 98-1402, 2000 WL 571919, at *1-2 (6 Cir. (Mich) May 3, 2000) (Circuit Court affirming district Court's dismissal of the complaint for lack of exhaustion, and noting that the dismissal was appropriate even though by time of the appeal the plaintiff's administrative remedies might have become time-barred) (citing Hartsfield v. Vidor, 199 F.3d 305, 309 (6 Cir. 1999); and Wright v. Morris, 111 F.3d 414, 417, n.3 (6 Cir. 1997)). Even an inmate's transfer from an institution does not remove the requirement that he/she pursue and exhaust administrative remedies concerning events which occurred at the institution prior to the inmate/prisoner's transfer. See Hall v. Richardson, 144 Fed.Appx. 835, 836, n.2 (11 Cir. 2005) (in case where plaintiff argued on appeal that he could not exhaust his administrative remedies because he was transferred from the institution where the alleged violations occurred, that he could no longer pursue exhausting his remedies through the administrative process, and that the transfer should be deemed to have removed the exhaustion requirements, the Appellate Court, upon affirming the district Court's dismissal pursuant to §1997e(a), rejected the plaintiff's arguments, and in doing so noted that incidents he complained of had occurred in December 2000 and December 2001, but he was not transferred until February 28, 2002, and therefore he had not exhausted his administrative remedies when he had the opportunity to do so).

exhaust his remedies. Myriam Harrison, the Warden's Secretary at the FDC Miami, executed a declaration wherein she described in detail the remedy requests submitted by Hayes between October 12, 2009 and January 8, 2010. Copies of the remedy requests are not contained in the record, Hayes did not attach copies to his original petition or his reply to the defendants' motion to dismiss. The following information is contained in Harrison's declaration.

On 10/26/09, Hayes filed remedy request #562209-R1 with the Regional Director's office using a B-10 form and marking it sensitive. Hayes requested a transfer for protection. On 10/28/09, the Regional Director's office rejected the request as not sensitive and directed Hayes to file a request with the FDC Miami warden's office. (DE# 40-5, ¶9). Hayes did not refile his request as directed.

On 11/24/09, Hayes filed remedy request #569768-R1 with the Regional Director's office using a B-10 form and marking it sensitive. Hayes requested a transfer for protection. On 10/28/09, the Regional Director's office rejected the request as not sensitive and directed Hayes to file a request with the FDC Miami warden's office. (DE# 40-5, ¶9). Hayes did not file his request with the local warden and instead filed an appeal with the General Counsel's office on 1/11/10, #569768-A1. Hayes used a B-11 form and marked the appeal as sensitive. On 3/11/10, the appeal was rejected as not sensitive.

On 11/25/09, Hayes filed remedy request #569715-A1 with the Regional Director's office using a B-10 form and marking it sensitive. Hayes alleged unjust treatment. On 12/18/09, the Regional Director's office rejected the request as not sensitive and directed Hayes to file a request with the FDC Miami warden's

office. (DE# 40-5, ¶9).  Hayes did not file his request with the local warden and instead filed an appeal with the General Counsel's office on 1/27/10, #569715-R1. Hayes used a B-11 form and marked the appeal as sensitive.  On 3/11/10, the appeal was rejected as not sensitive.

On 2/5/10, Hayes filed remedy request #575917-R1 with the Regional Director's office using a B-10 form and marking it sensitive.  Hayes alleged staff retaliation.  On 2/5/10, the Regional Director's office rejected the request as not sensitive and directed Hayes to file a request with the FDC Miami warden's office. (DE# 40-5, ¶9).  Hayes did not refile his request as directed.

On 2/29/10, Hayes filed remedy request #582821-A1 directly with the General Counsel's office, wherein he alleged unjust treatment.  On 3/29/10, the General Counsel's office rejected the remedy request based on Hayes's failure to first file a request as a BP-9 form with the local warden's office.

On 3/4/10, Hayes filed remedy request #583815-A1 directly with the General Counsel's office, wherein he alleged abuse by staff after filing allegations and marked as sensitive.  On 4/5/10, the General Counsel's office rejected the remedy request as not sensitive.  Hayes did not resubmit the remedy request as a BP-9 form with the local warden's office.

On 4/20/10, Hayes filed remedy request #589045-A1 directly with the General Counsel's office, wherein he alleged the staff chased and assaulted him and marked the request as sensitive.  On 5/7/10, the General Counsel's office rejected the remedy request as not sensitive.  Hayes did not resubmit the remedy request as a BP-9 form with the local warden's office.

Hayes finally initiated the administrative remedy request process at the local level on 3/25/10. Specifically, Hayes filed a BP-9 form #582650-F1 with the FDC-Miami warden's office, wherein he alleged that he was threatened by the staff and by the inmates and raised claims of staff misconduct. On 3/31/10, the request was denied and Hayes was advised that an investigation into his allegations of staff misconduct had been initiated. On 4/20/10, Hayes filed an appeal, BP-10 form #582650-A1, with the Regional Director's office. On 4/22/10, the appeal was rejected and Hayes was advised that his form was illegible and that he had 10 days to resubmit his appeal. On 6/1/10, the Regional Director's office received Hayes's re-submission, #582650-A2. On 6/10/10, the Regional Director's office rejected #582650-A2 as untimely filed due to his failure to re-file his appeal within ten days of the 4/22/10 rejection. On 7/7/10, Hayes appealed the rejection of #582650-A2 with the General Counsel's office. On 7/22/10, the appeal was rejected as untimely due to his failure to resubmit his BP-10 form within ten days following the 4/22/10 rejection by the Regional Director's office.

Hayes argues in his response to the motion to dismiss that he did not receive the 4/22/10 rejection until 5/18/10. He further claims that he re-submitted his appeal within ten days of receipt, namely, on 5/24/10, not on 6/1/10 as alleged by the defendants. Hayes attached to his response the 4/22/10 Rejection Notice issued by the Regional Office. A handwritten note on the notice provides, "Inmate Hayes received this on 5/18/10, [Counselor] B.Gary." (DE# 47, Ex. 13). To show he resubmitted his appeal on 5/24/10, Hayes attached an inmate request to staff form he submitted on 5/24/10 wherein he requested proof that he mailed "some legal mail" on 5/24/10. The staff member wrote on the disposition of the request, "a review of the legal mail log indicates the following entry for May 24, 2010. (1) South East Regional Office . . . There are no

13

other entries for this date for inmate Hayes." (DE# 47, Ex. 14).

Hayes is attempting to cure his failure to exhaust his administrative remedies by arguing that the Regional Director's Office and General Counsel's office erred in deeming his re-submission as untimely. The 4/22/10 notice states "You may resubmit your appeal in proper form within 10 days of the date of this rejection notice." Under the remarks, the Regional Office directed Hayes to "request assistance from staff." Hayes was placed on notice that he was expected to resubmit the appeal within ten days of 4/22/10. Assuming he received the notice on May 18, 2010, the resubmission was already untimely. Hayes has not provided any evidence that he raised the fact, with the local staff or with the Regional Office, that it was impossible for him to timely comply because he did not receive the notice until May 18, 2010. He simply resubmitted his appeal. When the appeal was rejected as untimely, he appealed to the General Counselor's office. Hayes has not provided any evidence that he raised the fact with the General Counselor's office that he did not receive the 4/22/10 notice until 5/18/10.

Assuming that Hayes received the 4/22/10 notice on 5/18/10, the official documentation generated by the Regional Office (attached to Hayes's response to the motion to dismiss) indicates that Hayes did not comply with the 4/22/10 notice until 6/1/10, which is more than ten days after he allegedly received the notice. <u>See</u> (DE# 47, Ex. 15). Hayes provides documentation illustrating that he sent some "legal mail" to the Regional Office on 5/18/10, however, this falls short of establishing that the legal mail was his re-submitted appeal.

Finally, Hayes fails to establish that he exhausted his

administrative remedies because Hayes has not provided this court with a copy of the 3/25/10 remedy request filed with the FDC-Miami warden. It is impossible to ascertain whether he raised in his 3/25/10 request the same issues he raises in the instant proceedings. Hayes attaches copies of various remedy request forms, which contain various allegations, however, none of these forms have official markings, establishing that Hayes actually submitted the request forms.

## V. Conclusion

It is therefore recommended that: 1) the defendants' motion to dismiss and/or for summary judgment (DE#40), treated as a motion for summary judgment, be GRANTED as to all defendants and claims; and 2) this case be closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Dated: July 22nd, 2011.

_____
UNITED STATES MAGISTRATE JUDGE

cc: Moses Hayes
    Reg. No. 31538-018
    USP - Beaumont
    P. O. Box 26030
    Beaumont, TX 77720

    Charles S. White
    United States Attorney's Office
    99 NE 4 Street
    Miami, FL 33132

15